UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

SPRINGBOARDS   TO   EDUCATION,   §
INC.,                            §
                                 §
      Plaintiff,                 §
                                 §
v.                               §      CIVIL ACTION NO. 3:16-CV-2509-B
                                 §
HAMILTON COUNTY READ 20,         §
                                 §
      Defendant.                 §

<u>MEMORANDUM OPINION AND ORDER</u>

Before the Court is Defendant Hamilton County Read 20's Motion to Dismiss Plaintiff's

Complaint for Lack of Personal Jurisdiction, Improper Venue, and Insufficient Service of Process.

Doc. 11 [hereinafter Def.'s Mot. to Dismiss]. As the title suggests, Defendant's Motion asserts three

alternative grounds upon which the Court should dismiss Plaintiff's Complaint (Doc. 1). Yet as

addressed below, the Court need address only one of those grounds. For the reasons that follow, the

Court determines that it lacks personal jurisdiction over Defendant. But rather than dismiss for lack

of personal jurisdiction, the Court transfers this case to the Eastern District of Tennessee pursuant

to 28 U.S.C. § 1406(a).

I.

BACKGROUND[1]

This is a trademark dispute. Plaintiff is a corporation that designs, markets, and sells reading

---

[1]The Court draws its factual account from the initial pleadings as well as the parties' briefing on the
Motion at issue. Any contested fact is identified as the allegation of a particular party.

and reading-related products. Doc. 1, Pl.'s Compl. ¶ 2. Plaintiff claims that Defendant manufactured, produced, distributed, advertised, promoted, marketed, and offered for sale products that infringed on Plaintiff's trademarks without authorization. *Id.* ¶ 3.

Plaintiff maintains that it owns the entire right, title, and interest in and to several reading-related trademark registrations and applications. Doc. 1, Pl.'s Compl. ¶ 2; *see also* Doc. 1-2, Pl.'s Ex. A (listing trademarks). Plaintiff began selling products and services with its trademarks at least as early as 2005. Doc. 1, Pl.'s Compl. ¶ 5. Plaintiff "spends substantial resources in marketing and promoting" each year and "sells hundreds of thousands of dollars of goods and services." *Id.* ¶ 7.

Plaintiff says that it maintains strict quality control standards for all of its products. *Id.* ¶ 6. As a result, Plaintiff claims, its products have acquired a valuable reputation over the years in the United States and throughout the world. *Id.* ¶ 8. Plaintiff argues that its brand and trademarks are symbols of its "superior quality, reputation, and goodwill." *Id.* Thus, Plaintiff alleges, it has "suffer[ed] irreparable harm and . . . substantial damages as a result of Defendant's counterfeiting and infringing activities." *Id.* ¶ 20.

Defendant is a program of Hamilton County, Tennessee, that aims to encourage childhood reading in Hamilton County, and the immediately surrounding counties, by "promoting the importance of reading with children at least 20 minutes a day." Doc. 12, Def.'s Br. in Supp. of Mot. to Dismiss 1 [hereinafter Def.'s Br.]. Defendant says that three full-time Hamilton County employees run Read 20's day-to-day operations. *Id.* at 9.

The Court's focus here is Defendant's website, which Plaintiff says Defendant uses to infringe on its reading-related trademarks. Doc. 1, Pl.'s Comp. ¶ 10. Defendant contests that claim, and states

that it operates a non-interactive website to encourage reading in Hamilton County. Doc. 12, Def.'s Br. at 1–2. According to Defendant, one cannot order goods, enroll in memberships, chat, or otherwise interact through the website. *Id.* Plaintiff disagrees: "Defendant transacts a sufficient amount of business in Texas throughout [sic] the use of its interactive website." Doc. 1, Pl.'s Compl. ¶ 10. Yet Defendant avers that, within the state of Texas, it does not conduct any business, have an office, have an agent or employees, own any real property, or pay taxes. Doc. 12, Def.'s Brief 2.

Nevertheless, Plaintiff filed suit against Defendant in August 2016 for trademark infringement. Doc. 1, Pl.'s Compl. In October, process was served on Shawn Kurrelmeier-Lee, Read 20's Chief Reading Officer. Doc. 8, Summons. Defendant, in turn, filed this Motion to Dismiss, alternatively arguing that Plaintiff's case should be dismissed for: (1) lack of personal jurisdiction; (2) improper venue; and (3) insufficient service of process. Doc. 11, Def.'s Mot. to Dismiss 1. Plaintiff responded to Defendant's Motion. Doc. 17, Pl.'s Resp. to Mot. to Dismiss [hereinafter Pl.'s Resp.]. And Defendant replied. Doc. 18, Def.'s Reply to Pl.'s Resp. [hereinafter Def.'s Reply]. Thus, Defendant's Motion to Dismiss is ripe for the Court's review.

## II.

## LEGAL STANDARD[2]

A.    *Federal Rule of Civil Procedure 12(b)(2)*

Federal Rule of Civil Procedure 12(b)(2) allows for dismissal of an action when a court lacks personal jurisdiction over a defendant. With that in mind, "[t]he plaintiff bears the burden of establishing jurisdiction, but need only present prima facie evidence." *Revell v. Lidov*, 317 F.3d 467,

---

[2]As explained below, the Court concludes that it lacks personal jurisdiction over Defendant in this case. On that basis, the Court need only address Defendant's 12(b)(2) argument.

469 (5th Cir. 2002); *see also McFadin v. Gerber*, 587 F3d 753, 758 (5th Cir. 2009) ("On a challenge to the court's personam jurisdiction, a plaintiff must make only a prima facie showing of the predicate facts.").

To that end, the Court may consider "affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery." *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985). The Court "'must resolve all undisputed facts submitted by the plaintiff, as well as all facts contested in the affidavits, in favor of jurisdiction.'" *McFadin*, 587 F.3d at 758 (quoting *Luv N' care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006)).

"A federal court may exercise personal jurisdiction over a nonresident defendant if[:] (1) the forum state's long-arm statute confers personal jurisdiction over that defendant; and (2) the exercise of personal jurisdiction comports with the Due Process Clause of the Fourteenth Amendment." *Id.* Texas's "long-arm statute extends to the limits of federal due process." *Johnston v. Multidata Sys. Int'l., Corp.*, 523 F.3d 602, 609 (5th Cir. 2008). So "the two-step inquiry collapses into one federal due process analysis." *Id.*

Federal due process requires the plaintiff to demonstrate that: (1) the defendant purposefully availed itself of the benefits and protections of the forum state by establishing "minimum contacts" with that state such that it would reasonably anticipate being brought to court there; and (2) the exercise of jurisdiction over the defendant does not offend traditional notions of fair play and substantial justice. *Id.*

Minimum contacts can "give rise to either general or specific personal jurisdiction." *Anness v. Gen. Elec. Co.*, No. 4:13-cv-935-O, 2014 WL 12580494, at *2 (N.D. Tex. June 5, 2014) (citing

*TGI Friday's Inc. v. Great Nw. Rests., Inc.*, 652 F. Supp. 2d 750, 756 (N.D. Tex. 2009). General jurisdiction exists "when the nonresident defendant's contacts with the forum state, even if unrelated to the cause of action, are continuous, systematic, and substantial." *Marathon Oil Co. v. Ruhrgas*, 182 F.3d 291, 295 (5th Cir. 1999). Specific jurisdiction, by contrast, exists "'when the defendant has purposefully directed [its] activities at the residents of the forum and the litigation results from alleged injuries that arise out of or relate to those activities.'" *Anness*, 2014 WL 12580494, at *2 (quoting *Clemens v. McNameee*, 615 F.3d 374, 378 (5th Cir. 2010)).

Plaintiff alleges that the Court has personal jurisdiction over Defendant "because Defendant transacts a sufficient amount of business in Texas throughout [sic] the use of its interactive website and promotional materials." *See* Doc. 1, Pl.'s Compl. ¶ 10. As pled, Plaintiff's jurisdictional allegation could suggest specific or general jurisdiction—although it seems a far cry from the "continuous, systematic, and substantial" contacts needed to show general jurisdiction. *See Marathon*, 182 F.3d at 295. Yet due to Plaintiff's briefing, the Court need not guess at which variety of minimum contacts Plaintiff intended in its Complaint. Plaintiff's Response addresses only specific jurisdiction. Doc. 17, Pl.'s Resp. 2–5; *see also* Doc. 12, Def.'s Br. 4 ("Plaintiff alleges only specific jurisdiction[.]"). Accordingly, the Court considers only whether it has specific jurisdiction over Defendant.

### III.

### ANALYSIS[3]

A.    *Personal Jurisdiction*

To determine whether Plaintiff has made a prima facie showing of specific jurisdiction, the

---

[3]As set out above, the Court concludes that it does not have personal jurisdiction over Defendant in this case. Thus, the Court need not address Defendants alternative arguments for dismissal.

Court must address how online conduct may create personal jurisdiction. Plaintiff makes one argument for specific jurisdiction: "Defendant transacts a sufficient amount of business in Texas throughout [sic] the use of its interactive website and promotional materials." Doc. 1, Pl.'s Compl. ¶ 10. That argument fails because Plaintiff has not alleged that a single disinterested Texas resident used Defendant's website at all, let alone purchased an infringing product through it.

The Fifth Circuit has adopted what is known as the *Zippo* sliding scale test for determining whether internet-based contacts establish personal jurisdiction over a nonresident defendant. *Revell*, 317 F.3d at 470 (adopting test from *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1123 (W.D. Pa. 1997)). The aim of the *Zippo* test is to "measure an internet site's connection to a forum state," using a three-point spectrum of connectivity: low, medium, or high. *Id.* On the low end "where a website is nothing more than a passive advertisement, the court must decline to exercise personal jurisdiction." *Autoflex Leasing-Dallas I, LLC v. Autoflex LLC*, No. 3:16-cv-2589-D, 2017 WL 713667, at *4 (N.D. Tex. Feb. 23, 2017). Conversely, on the high end "where a website facilitates contractual relationship and the knowing and repeated transmission of computer files on the Internet, personal jurisdiction is proper." *Id.* And in the middle "where a website falls somewhere in between, 'the exercise of jurisdiction is determined by the level of interactivity and commercial nature of the exchange of information that occurs on the website.'" *Id.* (quoting *Mink v. AAAA Dev. LLC*, 190 F.3d 333, 336 (5th Cir. 1999)).

Defendant's website falls in the middle of the *Zippo* spectrum. As Plaintiff notes, the website states that Read 20 has established national partnership to buy books and "allows any individual, no matter their place of residence, to register for the [R]ead 20 promise, to donate books, and to make

monetary donations." Doc. 17, Pl.'s Resp. 5. Defendant's website also "has links for anyone to download the Read 20 application on the Apple App Store or the Android App on Google play." *Id.* Yet as Defendant counters, its website is mainly contact information and volunteer resources—users cannot order goods or services through the website directly, enroll in memberships, or otherwise interact with Read 20 staff members. Doc. 12, Def.'s Br. 6–8; Doc. 13, Def.'s App. Supp. Def.'s Mot. Dismiss 5 [hereinafter Def.'s App.], Kurrelmeier-Lee Decl. In support, Defendant offers both the declaration of Kurrelmeier-Lee, its Chief Reading Officer, and screenshots of the website itself. Doc. 13, Def.'s App. 4–6, Kurrelmeier-Lee Decl; 10–47, Taubert Decl. Ex. 1. Plaintiff does not refute or otherwise contest those assertions. So while Defendant's website is certainly more than a passive advertisement, it is not a "virtual store" facilitating contractual relationships. *See Autoflex Leasing-Dallas I*, 2017 WL 713667, at *4. Therefore, it falls in the middle of the *Zippo* spectrum.

"Having determined that [Defendant's website] falls in the middle of the *Zippo* scale, the [C]ourt next examines the interactivity and commercial nature of the exchanged information." *Id.* (citing *Mink*, 190 F.3d at 336). In undertaking that examination, "[t]he critical inquiry, . . . as with any personal jurisdiction case, is whether the contacts suggest that the nonresident defendant purposefully directed its activities toward the forum state or purposefully availed itself of the privilege of conducting activities within the forum state." *Mothers Against Drunk Driving v. DAMMADD, Inc.*, No. 302CV1712G, 2003 WL 292162, at *5 (N.D. Tex. Feb. 7, 2003).

Together, Plaintiff's allegations—that Defendant has national partnerships, allows people to register for a reading pledge, takes donations, and offers apps for download—"fail to meet the minimum threshold for specific jurisdiction." *Id.* at *6. Under *Zippo*, personal jurisdiction is based on

*actual* internet sales to forum residents, not the mere possibility of sales. *See Mink*, 190 F.3d at 337 ("Absent a defendant doing business over the internet or sufficient interactivity with residents of the forum state, we cannot conclude that personal jurisdiction is appropriate."). Plaintiff fails to allege, let alone offer prima facie proof, that a single disinterested Texas resident purchased an infringing product on Defendant's website or, for that matter, accessed the website at all. *See CMC Steel Fabricators, Inc. v. Franklin Inv. Corp.*, No. 3:15-cv-2854-B, 2016 WL 3418974, at *2 (N.D. Tex. June 22, 2016). Instead, Plaintiffs levies allegations such as:

> 9.    Upon information and belief, Defendant is manufacturing, advertising, promoting, distributing, offering for sale, and/or selling the products and/or services bearing marks and/or branding that is confusingly similar to and/or resembling the Springboard brand and Trademarks (the "Counterfeit Products") throughout the State of Texas.

> 10.    The breadth of Defendant's counterfeiting is extensive, as Defendant has sold at least thousands of pieces of Counterfeit products. Representative examples of Defendant's activities include, but are not limited to, the examples in Exhibit B.[4]

> 16.    Upon information and belief, Defendant is conducting its counterfeiting and infringing activities within the State of Texas.

Doc. 1, Pl.'s Compl. ¶¶ 9–10, 16. Those allegations, to be sure, mention some sales and the *potential* of sales in Texas. But they fail to allege any connection to Defendant's website and or identify any *actual* sales to Texas residents. Thus, they are insufficient to establish minimum contacts. *See Autoflex Leasing-Dallas I*, 2017 WL 713667, at *5.

Plaintiff's briefing also attacks Defendant's website's ability to potentially receive book and monetary donations from Texas residents, as well as to offer apps for Texas residents to potentially

---

[4] The Court notes that Exhibit B to Plaintiff's Complaint (Doc. 1-3) is just a cover page—no examples or other offers of proof are included.

download. Doc. 17, Pl.'s Resp. 5. Yet "voluntary donations . . . reflect a lack of regular commercial activity required to exercise *in personam* jurisdiction based on Internet contacts." *Mothers Against Drunk Driving*, 2003 WL 292162, at *6 (citing *Mink*, 190 F.3d at 337). The same goes, at least in this context, for potential app downloads. Plaintiff does not allege that Defendant operates a lucrative app business generated from Texas residents downloading its product—indeed, Plaintiff doesn't specify whether it costs anything to download the app. But even if it did, Plaintiff would still run into the same issue as the allegations above: Plaintiff fails to identify a single donation or download by a Texas resident. *See Autoflex Leasing-Dallas I*, 2017 WL 713667, at *5.

At bottom, "[t]hese web-based contacts simply fail to paint the picture of a significantly commercial website that is visited regularly by Texas residents." *Mothers Against Drunk Driving*, 2003 WL 292162, at *6. Nor is there any evidence beyond Plaintiff's conclusory assertions that Defendant operates its alleged counterfeiting business in Texas to suggest additional contacts between Defendant and Texas. *See id.* For those reasons, the Court concludes that Plaintiff has failed to make a prima facie showing of specific personal jurisdiction.[5]

---

[5]Plaintiff filed a Request for Judicial Notice (Doc. 30) of another case in this District that it says supports its claim for personal jurisdiction. The Court so takes notice, but concludes that the authority in question is not dispositive for two reasons: (1) that case is factually distinct as it involves a default; and (2) the court has not rendered a final decision on personal jurisdiction. *See* No. 3:16-cv-2512, Doc. 60, Order Staying J. In particular:

> 6.    After default judgment is set aside, FIS will be permitted to file a timely responsive pleading. The responsive pleading *may challenge the court's exercise of personal jurisdiction over FIS, and Springboards' response may assert that FIS has waived its challenge to the court's exercise of personal jurisdiction.*

*Id.* ¶ 6 (emphasis added).

B.    *Jurisdictional Discovery*

Plaintiff alternatively asks the Court "allow discovery to proceed and allow further development of the record in light of the arguments raised in Defendants' [sic] Motion." Doc. 17, Pl.'s Resp. 6–7. While not an express request for jurisdictional discovery, the Court will construe it as such given the circumstances.

When seeking jurisdictional discovery, a plaintiff must make a "preliminary showing of jurisdiction." *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 429 (5th Cir. 2005) (citing *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003) ("If a plaintiff presents factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts . . . the plaintiff's right to conduct jurisdictional discovery should be sustained.")). As addressed above, Plaintiff has made no such preliminary showing of jurisdiction.

Under *Zippo*, personal jurisdiction is based on *actual* internet sales to forum residents, not the mere possibility of sales. *See Mink*, 190 F.3d at 337 ("Absent a defendant doing business over the internet or sufficient interactivity with residents of the forum state, we cannot conclude that personal jurisdiction is appropriate."). Plaintiff has not pled, let alone with particularity, any sales to, donations by, downloads by, or website access by Texas residents. Instead, it has described a largely, if not entirely, non-commercial website with no tie to Texas residents other than being accessible on the web—in short, a site of the variety insufficient to confer personal jurisdiction under *Zippo*. *See Mothers Against Drunk Driving*, 2003 WL 292162, at *6. Accordingly, the Court concludes that jurisdictional discovery is unwarranted in this case.

C.    *Dismissal or Transfer*

Having concluded that it lacks personal jurisdiction over Defendant and that further jurisdictional discovery is inappropriate, the Court now considers whether to dismiss or transfer this case. "Where a court finds that it lacks personal jurisdiction, it may dismiss the action pursuant to Federal Rule of Civil Procedure 12(b)(2)." *Herman v. Cataphora, Inc.*, 730 F.3d 460, 466 (5th Cir. 2013). Conversely, the court can also transfer the action under 28 U.S.C. § 1406(a) "to 'any district or division in which it could have been brought' if the court finds that it is 'in the interests of justice' to transfer the action." *Id.* Courts generally prefer transfer to dismissal, and this Court is no different. *See Scott v. U.S. Army*, No. EP-07-CA-328, 2008 WL 3914835, at *1 (W.D. Tex. June 30, 2008) (quoting 14D Charles Alan Wright et al., Federal Practice & Procedure § 3827).

"Under § 1406(a), a court can order transfer regardless of whether it has personal jurisdiction over the defendants." *Autoflex Leasing-Dallas I*, 2017 WL 713667, at *5. "The statute specifically refers to 'laying venue in the wrong division or district,' but a transfer can be made due to the absence of personal jurisdiction in a district where venue is otherwise improper." *Herman*, 730 F.3d at 466. The decision to transfer is discretionary, and "often made to prevent waste of time, energy, and money and to protect litigants, witnesses, and the public against unnecessary inconvenience and expense." *Autoflex Leasing-Dallas I*, 2017 WL 713667, at *6.

With those factors in mind, the Court concludes that this case should be transferred rather than dismissed. Plaintiff, a Texas corporation, asserts federal and state trademark claims. *See* Doc. 1, Compl. 9–22. Defendant is in Hamilton County, Tennessee. Thus, a federal Court in Tennessee could exercise both subject matter and personal jurisdiction. "Under the general venue statute,

venue is proper in a judicial district in which the Defendant resides, or a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred. *Santander Cons. USA, Inc. v. Union Pontiac-GMC, Inc.*, No. 3:16-cv-2420, 2017 WL 2362046, at *5 (N.D. Tex. May 31, 2017) (citing 28 U.S.C. §§ 1391(b)(1)–(2)).

Defendant is a program of Hamilton County Tennessee, which is in the Eastern District of Tennessee. 28 U.S.C. § 123(a)(3). Thus, the Eastern District of Tennessee is a proper venue.[6] Transfer there would avoid unnecessary inconvenience to the parties, as well as the waste of time, energy, and money that would accompany starting this case anew. The Court therefore transfers this case to the Eastern District of Tennessee. *See id.; see also Autoflex Leasing-Dallas I*, 2017 WL 713667, at *6.

## IV.

## CONCLUSION

For the reasons stated above, the Court concludes that it lacks personal jurisdiction over Defendant. Rather than dismiss for lack of personal jurisdiction, however, the Court **TRANSFERS** this case to the Eastern District of Tennessee pursuant to 28 U.S.C. § 1406(a). All other relief not specifically granted is **DENIED**.

---

[6]The Courts notes that the exact nature of Defendant's relationship with Hamilton County (*i.e.*, whether it is an actual arm of the county itself or operating in some sort of private-public partnership) is unclear. Plaintiff asserts that Defendant "is organized and existing under the laws of the State of Tennessee, having its principal place of business at 317 Oak Street Room 109, Chattanooga, TN 37403. Doc. 1, Pl.'s Compl. ¶ 6. Chattanooga is in Hamilton County. Defendant, by contrast, says that it "is a *program of Hamilton County*." Doc. 12, Def.'s Br. 1 (emphasis added). In either event, the Eastern District of Tennessee is an appropriate venue. *See* 28 U.S.C. §§ 1391(b)(1)–(3) (stating venue is proper in a judicial district where defendants reside, a substantial part of the events giving rise to the claim occurred, or a court can exercise personal jurisdiction); *see also Autoflex Leasing-Dallas I*, 2017 WL 713667, at *6.

SO ORDERED.

SIGNED: July 14, 2017.

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE